IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 3, 2011

**TYLER KING v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Dyer County**
**No. C06-281   Lee Moore, Judge**

_____

**No. W2010-01403-CCA-R3-PC  - Filed June 6, 2011**

_____

The Petitioner, Tyler King, appeals as of right from the Dyer County Circuit Court's denial of his petition for post-conviction relief.  The Petitioner pled guilty to voluntary manslaughter, a Class C felony, and received an agreed sentence of 15 years in the Tennessee Department of Correction as a Range II, multiple offender.  The Petitioner challenges the voluntariness of his guilty plea and the performance of trial counsel.  Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Danny Goodman, Jr., Tiptonville, Tennessee, for the appellant, Tyler King.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Senior Counsel; and Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted for first degree premeditated murder on August 14, 2006. At the Petitioner's guilty plea submission hearing on August 26, 2009, the State summarized the proof that it would have presented had the Petitioner's case gone to trial.  On May 22, 2006, the Petitioner, who was on parole, was driving on Connell Street with Kim Watkins as his passenger.  The Petitioner and Mr. Watkins saw Kenyon Woods driving another car with Franklin Williams in the passenger seat.  The Petitioner exchanged words with Mr. Williams and attempted to get Mr. Woods to stop the car.  Eventually, the Petitioner "pulled up next to" Mr. Woods's car, leaned out of the passenger's side window, and "fired

numerous shots into the vehicle." Mr. Williams was struck "at least nine times" and died as a result of his injuries. Mr. Woods was not injured.

At the guilty plea submission hearing, the Petitioner did not indicate that he was unhappy with trial counsel or that he did not wish to plead guilty. On the contrary, he answered all of the trial court's questions and admitted his involvement in the offense. The Petitioner was asked three times if he understood that he was agreeing to a sentence that was outside of his range classification as a Range II, multiple offender. Each time, the Petitioner responded that he understood that his agreement provided for a sentence outside of his range classification. The Petitioner timely filed a petition for post-conviction relief in which he claimed that he did not voluntarily plead guilty because he did not understand that he was receiving a sentence outside of his range classification and that trial counsel was ineffective.

The proof at the evidentiary hearing consisted solely of the testimony of the Petitioner and trial counsel. The Petitioner testified that if he had been convicted of a lesser-included offense, he "would have been eligible as a Range I" offender. He said that trial counsel told him that the State would attempt to classify him as a Range II, multiple offender if he were convicted. He said that he did not understand that he was actually receiving a sentence that was outside of the Range II, multiple offender classification, which provided for sentences ranging from six to ten years. He said that he thought he was receiving a 15-year sentence because he was pleading guilty as a Range II, multiple offender. He said that he believed that trial counsel was ineffective because counsel allowed him to agree to a sentence that was outside of his range classification. He also testified that he felt that trial counsel did not investigate his case and did not respond to his requests to find and present character witnesses.

On cross-examination, the Petitioner admitted that he had three prior felony convictions and that he understood that he was properly classified as a Range II, multiple offender. He admitted that trial counsel advised him regarding the potential release eligibility percentages for the offenses of first degree murder, second degree murder, and voluntary manslaughter. He said that he understand that by pleading guilty to voluntary manslaughter, he was eligible for release after serving 35 percent of his sentence. He said that he wanted trial counsel to investigate the victim's prior felony convictions and other aspects of his case.

Trial counsel testified that he had been practicing criminal law for 27 years. He said that he advised the Petitioner that they were agreeing to a sentence that was outside of the proper range classification. He said that the District Attorney General had offered an agreement whereby the Petitioner would plead guilty to second degree murder and receive a 15-year sentence with an 85 percent release eligibility date. He said that the Petitioner

would not agree to an 85 percent release eligibility date because the Petitioner was already serving another sentence for an unrelated conviction. He said that he and the District Attorney General discussed a plea to voluntary manslaughter with a sentence of 15 years with a 35 percent release eligibility date and that to obtain that agreement, the Petitioner would have to agree to a sentence that was outside of his range classification. He said that he advised the Petitioner that the court could not sentence him to 15 years if the Petitioner were convicted of voluntary manslaughter and classified as a Range II, multiple offender but that the Petitioner could agree to the sentence.

Trial counsel testified that he was prepared for trial in the event that the Petitioner did not accept the plea agreement and that he was aware of the evidence against the Petitioner. He said that he had met with Mr. Watkins, the passenger inside the Petitioner's car, who was willing to testify against the Petitioner. He said that he had investigated the victim's prior record and "had obtained about four separate convictions, maybe five." He said that he learned that the victim "had a lengthy arrest and conviction record" and that four of the convictions "involved either violence or use of a handgun or the threat of the use of a handgun."

Trial counsel testified that he had advised the Petitioner that he believed that a conviction of voluntary manslaughter would have been the most favorable possible outcome but that he thought the Petitioner would have been convicted of second degree murder. He said that there was no question that the Petitioner had killed the victim. He said that he believed that the Petitioner would likely be classified as a Range II, multiple offender given his prior convictions.

On cross-examination, trial counsel said that he told the Petitioner that he would be classified as a Range II, multiple offender. He said that he told the Petitioner that the sentence range for his classification was 6 to 10 years for a voluntary manslaughter conviction but that they agreed to the 15-year sentence "because that's the only way [he] could get him a voluntary manslaughter plea agreement." He said that the Petitioner asked him why he should agree to a sentence outside of his range and that he told the Petitioner that it was the "best arrangement." Trial counsel said that he did not have any concerns with the legality of the sentence and that he felt like he explained everything to the Petitioner.

In its written order denying relief, the post-conviction court, citing Hoover v. State, 215 S.W3d 776 (Tenn. 2007), found that "a plea-bargain sentence is legal so long as it does not exceed the maximum punishment authorized for the plea offense." The court stated that the Petitioner was "instructed and advised by both his attorney, the District Attorney General, and the [c]ourt as to the basis for his plea." The court found that the Petitioner "entered a plea to voluntary manslaughter with a sentence of fifteen (15) years knowingly,

intelligently[,] and understandably." The court found that the Petitioner had failed to prove that trial counsel was deficient or that he was prejudiced by any alleged deficiencies.

## ANALYSIS

The Petitioner contends that he did not voluntarily plead guilty because he did not understand that he was pleading outside of his range. The Petitioner further contends that trial counsel was ineffective because counsel allowed him to plead outside of his range and because counsel "failed to properly explain the conditions of his plea of guilt." The State responds that the Petitioner's sentence was legal and that the Petitioner was advised that he was pleading outside of his range.

The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations to support his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); See Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). If the petitioner proves his allegations by clear and convincing evidence, the trial court must then determine whether trial counsel was ineffective according to Strickland v. Washington, 466 U.S. 668, 687 (1984). Dellinger, 279 S.W.3d at 293-94. On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. Strickland, 466 U.S. at 697. In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that "there is a reasonable probability" that but for the substandard performance, "the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989). In the context of a guilty plea as in this case, the effective assistance of counsel is relevant only to the extent that it affects the voluntariness of the plea. Therefore, to satisfy the second prong of Strickland, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have

-4-

insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Walton v. State, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing the voluntariness of a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our supreme court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

Because the plea must represent a voluntary and intelligent choice among the alternatives available, there are a number of circumstantial factors that should be considered when examining the voluntariness of a guilty plea. Id. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

To obtain post-conviction relief, the Petitioner has the burden of establishing by clear and convincing evidence that his guilty plea was entered involuntarily, unknowingly, or unintelligently. There was no evidence to suggest that the Petitioner was incapable of understanding the parameters of his sentence agreement or his counsel's advice. The Petitioner was familiar with criminal proceedings, having been convicted of several prior felonies. He was also represented by competent counsel. Indeed, the evidence presented at the evidentiary hearing reflects that trial counsel thoroughly and adequately investigated the Petitioner's case before advising him regarding the plea agreement. The Petitioner was told that he would likely be convicted of second degree murder and that he could have received a longer sentence if convicted of that offense. In fact, trial counsel's advice was correct. See Tenn. Code Ann. § 39-13-210(c) (providing that second degree murder was a Class A felony offense); see also Tenn. Code Ann. § 40-35-112(b)(1) (providing that a Range II sentence for a Class A felony conviction was 25 to 40 years).

Additionally, the Petitioner's agreement was legal. The Petitioner was convicted of a Class C felony; thus, as a Range II, multiple offender, he may have received a sentence of

not less than 3 nor more than 15 years. Tenn. Code Ann. § 40-35-112(a)(3), (b)(3), (c)(3). In <u>Hoover</u>, our supreme court held that "[a] plea bargained sentence may legally exceed the maximum available in the offender Range so long as the sentence does not exceed the maximum punishment authorized for the plea offense." 215 S.W.3d at 780. Accordingly, we conclude that the Petitioner's sentence was legal because it was within the overall punishment range of 3 to 15 years for his Class C felony offense.

Before the Petitioner pled guilty, counsel and the trial court advised him regarding his rights, the charges against him, and the potential sentence he could receive if he proceeded to trial. The Petitioner was asked three times if he understood that he was agreeing to a sentence that was outside of his range classification. Each time, the Petitioner stated that he understood his agreement to receive a sentence outside of his range classification. The record reflects that the Petitioner voluntarily, knowingly, and intelligently agreed to a plea arrangement that would result in his avoidance of the potential of receiving a longer sentence. Accordingly, we conclude that the post-conviction court did not err in finding that the Petitioner voluntarily, knowingly, and intelligently pled guilty and that counsel was not deficient.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE